Commonwealth of Pennsylvania by Attorney General LeRoy S. Zimmerman, Appellant *v.* Ronald Sklenar and Kenneth S. Woiner, Individually and t/d/b/a Mosside Auto Sales, 102 Centralia Street, Wall, Pennsylvania 15148, Appellees.

Argued November 13, 1984, before Judges ROGERS, CRAIG and PALLADINO, sitting as a panel of three.

*Cynthia A. Baldwin,* Deputy Attorney General, for appellant.

*Claudia C. Sharon, Sharon & Sharon,* for appellees.

OPINION BY JUDGE CRAIG, January 7, 1985:

The Commonwealth of Pennsylvania appeals an order of the Court of Common Pleas of Allegheny County quashing an administrative subpoena issued in connection with a Bureau of Consumer Protection investigation of a used car dealership known as Mosside Auto Sales. The subpoena directed the "owner or manager of Mosside Auto Sales" to produce certain documents relating to the operation of that business, in which Ronald Sklenar and Kenneth Woiner are the sole interested principals.

We must determine[1] whether the common pleas court accurately concluded that the Commonwealth did not produce sufficient evidence that Mosside Auto Sales is a partnership, and that therefore Sklenar and Woiner properly exercised their fifth amendment rights in refusing to produce documents which they claimed might incriminate them.

The protection afforded by U. S. Const. amend. V against compelled self-incrimination is limited to an individual and his personal papers and effects, and does not extend to a partnership or partnership documents. *Bellis v. United States,* 417 U.S. 85 (1974).

Therefore, the key issue in this appeal is whether Mosside Auto Sales is a partnership.

Section 11 of the Uniform Partnership Act, 59 Pa. C. S. §311, defines "partnership" as "an association of two or more persons to carry on as co-owners a business for profit." The courts of Pennsylvania have long held that co-ownership of a business and the sharing of its profits are indispensable requisites of a partnership. *Provident Trust Co. of Philadelphia v. Rankin,* 333 Pa. 412, 5 A.2d 214 (1939).

In *Bellis,* the United States Supreme Court did not permit a partner in a small law firm to invoke the fifth amendment privilege against producing the firm's financial records which he held in a representative capacity, even though those records might incriminate him personally. The Court held that a partnership is outside the protection of the fifth amendment if it is an "independent entity apart from its individual members" and meets the following test:

---

[1] When a witness invokes the fifth amendment privilege against self-incrimination, the court's function is to determine whether the witness' silence is justified. *United States v. Mahady & Mahady,* 512 F.2d 521 (3rd Cir. 1975) ; *White v. Commonwealth,* 59 Pa. Commonwealth Ct. 156, 428 A.2d 1044 (1981).

The group must be relatively well organized and structured and not merely a loose, informal association of individuals. It must maintain a distinct set of organizational records, and recognize rights in its members of control and access to them. And the records subpoenaed must in fact be organizational records held in a representative capacity. In other words, it must be fair to say that the records demanded are the records of the organization rather than those of the individual . . . .

417 U.S. at 92-93.

In *United States v Allshouse,* 622 F.2d 53 (1980), the Third Circuit interpreted *Bellis* as requiring in each case a factual determination of the "independence of the entity" based on (1) the length of the entity's existence; (2) the entity's organizational structure; and (3) whether the entity held itself out to third persons as an independent institution. *Id.* at 55.

In *Allshouse,* the court held that a trucking company, having two co-owners and no other personnel, was a partnership outside the fifth amendment protection, where the record contained a fictitious name certificate and evidence—such as an active bank account in the company's name, a company membership in a credit union, purchases of equipment and other transactions in the company name—indicating that the business held itself out as an independent entity.

Similarly here, the record establishes that Mosside, as such, has been a duly certified used car dealership since 1979, and is operated exclusively by Ronald Sklenar and Kenneth Woiner, without any other personnel. Of course, the size of the organization is not dispositive, as the Third Circuit held in *United States*

*v. Mahady & Mahady*, 512 F.2d 521 (3rd Cir. 1975) (small, family-run partnerships fall within the rule of *Bellis*).

In support of its position that Mosside is a partnership, the Commonwealth introduced the following evidence: (1) a fictitious name certificate showing Sklenar and Woiner as co-owners of Mosside Auto Sales; (2) a registration form showing Mosside as a motor vehicle dealer and Sklenar and Woiner as co-owners; (3) a check drawn on a bank account in the name of Mosside Auto Sales signed by Ronald Sklenar to the Department of Transportation for renewal of dealer plates; and (4) testimony from an agent of the Bureau of Consumer Protection that Woiner appeared in response to the subpoena and identified himself as a partner in Mosside Auto Sales.

Of course, the co-owners' refusal to produce the subpoenaed records and papers hampered the Commonwealth's efforts to document the business form under which Mosside operates. However, the Commonwealth's evidence substantially established that Mosside is an entity with an identity independent of the individual partners. *Bellis*. Sklenar and Woiner produced no evidence to support their position that their business is something other than a partnership; they argued only that the Commonwealth's evidence was insufficient.

The subpoena describes the requested documents as business records, such as purchase and sale invoices, ledger books, documents relating to the Pennsylvania motor vehicle inspections performed on the premises, odometer mileage statements required to be kept under the Motor Vehicle Information and Cost Savings Act of 1972, 15 U.S.C. §1901-2012, title and transfer documents and other records and documents relating to the operation of the business from January 1, 1982

through June 30, 1982. These documents clearly pertain to the motor vehicle dealership registered as Mosside. Also, the fifth amendment is inapplicable to any records which are "held subject to examination by the state." *Wilson v. United States,* 221 U.S. 361, 382 (1911).

As in *Bellis* and *Allshouse,* where the subpoenaed documents were partnership financial records, the business records described by the subpoena do not fall into the category of personal records possessing the element of personal privacy required to claim the fifth amendment privilege. Because the requested records are clearly those of the organization, they are not within the protection of the fifth amendment.[2]

Accordingly, we reverse.

ORDER

Now, January 7, 1985, the order of the Common Pleas Court of Allegheny County, Civil Division, at GD-17403, entered on January 28, 1983, is reversed.

---

[2] Moreover, recent United States Supreme Court cases indicate a reluctance to extend the fifth amendment privilege to business records, regardless of the form of the organization. In *Fisher v. United States,* 425 U.S. 391 (1976), a taxpayer transferred his accountant's income tax workpapers to his attorney for legal advice. The court ruled that whatever fifth amendment privilege the taxpayer had in those papers while in his possession did not extend to the attorney's possession of them, although the attorney-client privilege could protect the attorney from compelled production of documents delivered to the attorney for legal advice if the documents had indeed been privileged under the fifth amendment while in the taxpayer's hands. However, the Court ruled that the documents had *not* been privileged under the fifth amendment because they were not the taxpayer's papers, they were not prepared by the taxpayer, they did not contain any testimonial declarations by the taxpayer, and they were not prepared involuntarily or under any compulsion. Consequently, the content of the documents did not constitute compelled self-incrimination.